IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

DONALD W.,[1]

§
§
§

Plaintiff,

§
§

v.

§   CIVIL ACTION NO. 5:23-CV-043-H-BQ
§

KILOLO KIJAKAZI,

§
§

Acting Commissioner of Social Security,

§
§

Defendant.

§
§

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Donald W. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security

Commissioner's decision denying his applications for supplemental security income and disability

insurance benefits.  Under *Special Order 3-251*, the United States District Judge automatically

referred this case to the undersigned United States Magistrate Judge for further proceedings.  ECF

No. 5.  The parties did not unanimously consent to proceed before a magistrate judge.  After

carefully considering the parties' briefing and arguments, the administrative record, and applicable

law, the undersigned recommends that the United States District Judge affirm the Commissioner's

decision and dismiss Plaintiff's Complaint with prejudice.

## I.      Statement of the Case

Plaintiff filed applications for supplemental security income and disability insurance

benefits, alleging a disability onset date of November 15, 2019.  *See* Tr. 19, 248, 251.  The Social

Security Administration (SSA) denied his applications on December 14, 2020, and again upon

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name
and last initial.

reconsideration on March 24, 2022. Tr. 19, 85, 120. Plaintiff then requested a hearing before an administrative law judge (ALJ). Tr. 148–49. Represented by counsel, Plaintiff appeared and testified telephonically before the ALJ on August 17, 2022. Tr. 42–71. A vocational expert (VE) also provided testimony at the hearing. *Id.*

The ALJ determined on September 19, 2022, that Plaintiff was not disabled because "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 30–31 (emphasis omitted). The Appeals Council denied Plaintiff's request for review. Tr. 1. Consequently, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.    **Standard of Review**

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether:  (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2020); *see, e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per

2

curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2020); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2012); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III.   Facts

Plaintiff claims he became disabled on November 15, 2019, due to myriad health issues. *See* Tr. 19, 21–22. Plaintiff has a high school education and previous work history as a

3

packager/strapper, landscape laborer, punch press operator, warehouse worker, dishwasher, and cook in fast food establishments and restaurants. Tr. 29–30.

At step one, the ALJ found Plaintiff has not engaged in "substantial gainful activity" since November 15, 2019—i.e., the alleged onset date. Tr. 21. The ALJ determined at step two that Plaintiff has the following severe impairments: "primary knee osteoarthritis with medial meniscus tears and chondromalacia, coronary artery disease with stent, hypertension, hyperlipidemia, and degenerative disc disease." Tr. 21–22 (emphasis omitted). Despite the existence of severe impairments, the ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that meet or equal the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24.

The ALJ then assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff can "perform light work" as modified:

> The claimant can never climb. He can occasionally balance, stoop, kneel, crouch, or crawl. He requires the use of a cane for ambulation and uneven terrain. Finally, he must avoid work at unprotected heights or working around hazardous moving machinery.

*Id.* (emphasis omitted). Relying on the testimony of a VE, the ALJ concluded that although Plaintiff cannot perform past relevant work, he can perform jobs that exist in significant numbers in the national economy. Tr. 29–31. The VE testified that an individual of Plaintiff's age, education, work experience, and RFC could perform the requirements of jobs such as routing clerk, mail sorter, and ticket seller. Tr. 30–31. Accordingly, the ALJ determined at step five that Plaintiff is not disabled. Tr 31.

Plaintiff raises two points of error on appeal: (1) the ALJ "did not consider the consistency or supportability" factors when assessing the persuasiveness of Anusua Deb, M.D., Ph.D's medical

opinion; and (2) "[t]he ALJ improperly evaluated Plaintiff's complaints of symptoms and pain." Pl.'s Br. 4, 6, 8, ECF No. 19 (emphasis omitted). The Court examines his arguments below.

## IV.    Discussion

### A. The Parties' Positions

Plaintiff maintains that the ALJ's RFC determination is not supported by substantial evidence because the medical evidence reflects that he is more limited than the ALJ concluded. *Id.* at 4–8. In April 2022, Dr. Deb conducted a physical examination and "opined that Plaintiff's impairments were constantly severe enough to interfere with Plaintiff's attention and concentration," and "Plaintiff would need to recline or lie down . . . in addition to regularly scheduled breaks." *Id.* at 4–5. Plaintiff contends that the ALJ improperly "reject[ed] Dr. Deb's opinion based on Plaintiff's lack of surgical intervention, [his] activities of daily living, and [the lack of] medical evidence supporting a need for breaks." *Id.* at 6. Plaintiff asserts that the ALJ, however, "fails to identify what sort of medical evidence, other than testimony of pain and subjective complaints . . . , would support such a finding." *Id.* at 6–7.

Plaintiff further avers that while the ALJ relied on Plaintiff's daily activities to discount Dr. Deb's opinion, e.g., his "ability to walk, chase after his dog, [and] ride motorcycles," the ALJ "provide[d] no evidentiary support for these conclusions, many of which are contradicted by the evidence within the administrative record." *Id.* at 7. For instance, Plaintiff asserts he has "not ridden a motorcycle in over a year," and "the ALJ herself determined that Plaintiff's unstable gait required an assistive device 'for ambulation and uneven terrain.'" *Id.* Plaintiff also alleges the ALJ erred in relying on Plaintiff's non-compliance with treatment in rejecting his claim without following the mandatory requirements in Social Security Ruling (SSR) 82-59. *Id.* at 8. Plaintiff contends that ruling "instructs that a claimant with a disabling impairment must follow prescribed

treatment if such treatment could be expected to restore his ability to work." *Id.* Further, Plaintiff explains that a claimant must be given notice of the consequences of failing to follow prescribed treatment before benefits are denied, but here, "the ALJ made no such effort to comply and instead simply demonstrated her bias against Plaintiff's substance abuse addiction . . . as a reason to improperly discredit Dr. Deb." *Id.*

In addition, Plaintiff argues that "[t]he ALJ improperly evaluated Plaintiff's complaints of symptoms and pain." *Id.* (emphasis omitted). According to Plaintiff, "the ALJ provide[d] only the typical boilerplate" language without "perform[ing] the necessary analysis of Plaintiff's complaints of disabling pain." *Id.* at 9–10. Moreover, Plaintiff avers that "the ALJ fail[ed] to point to any specific evidence . . . in support of her conclusions, []or . . . discuss the evidence that contradicts her conclusions." *Id.* at 10. In Plaintiff's view, because there was "evidence of a medical impairment which could reasonably be expected to produce the pain alleged, the ALJ should have accounted for it in crafting the RFC." *Id.* at 11. While the ALJ "recognized that Plaintiff had constant pain in his knees," she did not account for it in the RFC and failed to provide "express findings and citations to contrary evidence." *Id.* Thus, Plaintiff concludes that because the ALJ did not consider all of his limitations, the decision is not based on substantial evidence and must be remanded. *Id.*

Conversely, the Commissioner asserts that the ALJ properly found the extreme limitations in Dr. Deb's opinion not persuasive. Def.'s Br. 4, ECF No. 20. Contrary to Plaintiff's assertion, the Commissioner contends the ALJ cited consistency and supportability factors in assessing Dr. Deb's opinion and concluded that the record does not support a finding that Plaintiff "would be unable to sit, stand or walk for 6 out of 8 hours and be required to lay down" or needed "frequent breaks or absences." *Id.* at 4. Further, the ALJ cited to records showing that Plaintiff "failed to

follow-up on recommendations made by the treating doctor," such as getting knee surgery, and found that this "suggested . . . the symptoms may not have been as serious as" Plaintiff alleged. *Id.* at 4–5. Moreover, the Commissioner argues "the record reflects his ability to walk, chase after his dog . . . , sustain a range of daily activities" and based on the state examiner's medical consultation, "the ability to sustain light work." *Id.* at 5. The Commissioner also avers that because "Plaintiff's mental status examinations . . . have been generally unremarkable, showing no limitation in his attention and concentration," the ALJ did not err in finding this limitation in Dr. Deb's opinion unpersuasive. *Id.*

Additionally, the Commissioner asserts the ALJ "was not required to determine if Plaintiff complied with his prescribed treatment and, if not, whether his reasons were justified," because "the ALJ reviewed Plaintiff's noncompliance not in terms of whether" he was disabled when compliant, "but in terms of the trustworthiness of Plaintiff's subjective complaints." *Id.* at 7. The Commissioner also contends that the ALJ properly evaluated Plaintiff's subjective complaints. *Id.* The Commissioner points to the ALJ's opinion and notes that the ALJ found that the record did "not support a long-term difficulty being on [Plaintiff's] feet or using a cane with treatment." *Id.* at 8. Rather, the record shows that Plaintiff's severe symptoms were relieved by a successful surgery, and following an additional knee surgery in "December 2020, there was no evidence of gait abnormality" or "acute abnormality in the left knee." *Id.* Plaintiff also declined to continue his follow-up appointments, which the Commissioner argues "strongly supports [a finding] that the surgery was successful and not" problematic. *Id.* Similarly, when Plaintiff was referred and later scheduled for knee surgery after his motorcycle accident in July 2021, he "missed medical appointments and declined to discontinue substance abuse," again supporting the conclusion that his symptoms were not as serious as described. *Id.* at 8–9. The Commissioner also references

records from December 2021 showing that Plaintiff reported "being more active and chasing his

dog, suggesting much greater activity levels than alleged." *Id.* at 8. Finally, the ALJ relied on "a

consultative examination performed on February 19, 2022, by Stephen Sierra, M.D.," where

"Plaintiff reported typical daily activities consisting of doing housework [and] . . . yardwork,

walking, shopping, doing laundry, sweeping, driving and caring for pets," and demonstrated "5/5

strength throughout, no muscle spasms, and no atrophy." *Id.* at 9. Thus, the Commissioner

concludes the "ALJ properly considered Plaintiff's symptoms of pain . . . and accounted for this

pain with a reduced level of light exertional RFC." *Id.*

In his reply, Plaintiff maintains that the ALJ failed to properly evaluate Dr. Deb's opinion,

as well as his subjective complaints, and asserts the Commissioner does not point to any such

analysis in the ALJ's opinion showing otherwise. Pl.'s Reply 1–2, ECF No. 21. In Plaintiff's

view, the Commissioner merely "summarize[d] the evidence to support [the ALJ's] argument that

the physician's opinions were too extreme." *Id.* at 1. Such *post hoc* evaluation, Plaintiff argues,

"does not satisfy the requirements of the regulations," nor does "the ALJ's summary of evidence

without any correlating analysis." *Id.*

### B. The ALJ explained the supportability and consistency factors in finding Dr. Deb's opinion unpersuasive, and the RFC determination is supported by substantial evidence.

"A medical opinion is a statement from a medical source about what [a claimant] can still

do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations

or restrictions." 20 C.F.R. § 404.1513(a)(2); *see* 20 C.F.R. § 416.913(a)(2). The ALJ evaluates

every medical opinion regardless of its source but "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a)(3), 404.1520c(a), 416.920(a)(3), 416.920c(a).[2]

Under the regulations, the ALJ should review the following factors in evaluating medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). In her decision, however, an ALJ need only specifically address two factors: the supportability of a medical opinion and the consistency of that opinion—i.e., factors one and two. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support . . . her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." §§ 404.1520c(c)(1), 416.920c(c)(1). Concerning consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." §§ 404.1520c(c)(2), 416.920c(c)(2).

In Plaintiff's view, the ALJ's RFC determination is not supported by substantial evidence because the medical evidence reflects that he is more limited than the ALJ concluded. Pl.'s Br. 4–8. Plaintiff contends the ALJ did not explain the supportability and consistency factors in evaluating Dr. Deb's opinion, but rather "attempt[ed] to reject Dr. Deb's opinion based on Plaintiff's lack of surgical intervention, [his] activities of daily living, and [the lack of] medical evidence supporting a need for breaks." *Id.* at 6. Plaintiff further alleges that while the ALJ relied on Plaintiff's daily activities to discount Dr. Deb's opinion, she "provide[d] no evidentiary support

---

[2] Plaintiff filed his application after March 27, 2017; therefore, § 404.1520c and § 416.920c apply.

for these conclusions, many of which are contradicted by the evidence within the administrative record." *Id.* at 7. The Commissioner asserts that the ALJ properly found the extreme limitations in Dr. Deb's opinion unpersuasive. Def.'s Br. 4. Contrary to Plaintiff's assertion, the Commissioner avers the ALJ cited consistency and supportability factors in assessing Dr. Deb's opinion and concluded that the record did not support that Plaintiff "would be unable to sit, stand or walk for 6 out of 8 hours and be required to lay down" or needed "frequent breaks or absences." *Id.* at 4.

Dr. Deb, a treating physician, evaluated Plaintiff on April 11, 2022, and determined that Plaintiff's "symptoms associated with [his] impairments [were] severe enough to [constantly] interfere with the attention [and] concentration required to perform simple work-related tasks." Tr. 658–59. Dr. Deb also checked "[y]es" under the question asking if Plaintiff would "need to recline or lie down during a hypothetical 8-hour workday in excess of the typical" two fifteen-minute breaks and thirty-to-sixty-minute lunch break. Tr. 658. In addition, she concluded that Plaintiff could walk zero city blocks without significant pain and only sit for two hours and stand for zero hours in an eight-hour workday. *Id.* Lastly, she opined that Plaintiff would miss work three or four times a month due to his impairments. Tr. 659.

The state medical examiner's opinion dated March 16, 2022, tells a markedly different story. Tr. 109. Despite being just a few weeks before Dr. Deb's examination of Plaintiff, Patty Rowley, M.D., determined that Plaintiff could stand and/or walk and sit for six hours in an eight-hour workday, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders. Tr. 108.

"[T]he ALJ is required to 'explain how he considered the supportability and consistency factors for a medical source's medical opinions . . . in [plaintiff's] determination or decision.'"

*Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (citation and alteration omitted). Courts require the ALJ to establish "a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Edwards v. Kijakazi*, No. 4:22-cv-00520, 2023 WL 2386748, at *3 (S.D. Tex. Mar. 6, 2023) (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021)), *R. & R. adopted by* 2023 WL 2616018 (S.D. Tex. Mar. 22, 2023). The "ALJ's persuasiveness discussion is critical to his analysis and . . . he must provide the [c]ourt with an 'adequate discussion' of his reasons for finding a particular medical opinion to be persuasive or unpersuasive." *Cooley*, 587 F. Supp. 3d at 499 (quoting *Pearson*, 2021 WL 3708047, at *5). An ALJ conducts an "adequate discussion" if he "enables . . . the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence." *Id.* (citations omitted).

The ALJ considered both the supportability and consistency of Dr. Deb's opinion. Although the ALJ conducted a much more in-depth examination of the inconsistencies between Dr. Deb's opinion and other medical evidence, the record nevertheless confirms the ALJ "adequately discussed" her grounds for finding Deb's opinions unpersuasive, both as to supportability and consistency, and that substantial evidence supports the ALJ's finding.

The ALJ discussed the records from several exams occurring over the course of approximately two years, including the opinions of three doctors—Deb, Sierra, and Rowley. Tr. 25–29. While not a model of clarity, the ALJ discussed Dr. Deb's exam findings and concluded that the extreme limitations were unsupported. *See* Tr. 29. Moreover, she found Dr. Deb's opinion "not persuasive" because the "record does not support that the claimant would be unable to sit, stand or walk 6 out of 8 hours," nor does it "document flare-ups to support frequent breaks or

absences," but instead "reflects his ability to walk, chase after his dog, ride motorcycles, [and] sustain a range of daily activities."[3] Tr. 29.

Further bolstering the ALJ's conclusion as to supportability is the fact that Dr. Deb's checkbox opinion was unsupported by explanation or further rationale. "The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations." *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *7 (N.D. Tex. Dec. 4, 2020) (citing *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) and *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)); *see Heck*, 674 F. App'x at 415 ("We have previously characterized responses to a questionnaire format as typical brief or conclusory testimony and declined to accord these responses controlling weight when they lack explanatory notes or supporting objective tests and examinations." (internal quotation marks and alterations omitted)). Although not specifically discussed by the ALJ, the record nevertheless demonstrates that Dr. Deb's opinion concerning Plaintiff's purported severe limitations are contained in a checkbox form without accompanying explanation or evidence, thus rendering the medical opinion unsupportable. *See Bradley v. Kijakazi*, No. 3:22cv277-RP, 2023 WL 4278793, at *3–4 (N.D. Miss. June 29, 2023) (concluding that remand was not required because even though the ALJ committed procedural error by failing to explain why he found a doctor's opinion unpersuasive, there was no prejudice to plaintiff because the checkbox opinion was unsupported); *Lara v. Kijakazi*, No. 3:21-

---

[3] The ALJ acknowledged Plaintiff's testimony that he had not ridden a motorcycle for over a year following the reported accident (Tr. 25), but also cited his ability to ride in determining Plaintiff's RFC. Even assuming the ALJ's conclusion in this regard is erroneous, and Plaintiff has indeed not ridden in over a year, the record nevertheless contains substantial evidence supporting the ALJ's RFC determination. *See, e.g.*, Tr. 26 (discussing daily activities in October and December 2021, which included being more active and chasing his dog); Tr. 28 (evaluating Dr. Sierra's February 2022 consultative examination's persuasiveness, where Plaintiff reported the ability to sustain a range of daily activities, "presented with a cane but walked without it," and could perform several tests demonstrating strength and range of motion).

CV-1032-L-BH, 2022 WL 4486085, at *13 (N.D. Tex. Aug. 29, 2022) ("District courts in this circuit have found that . . . brief and conclusory opinions unsupported by relevant medical evidence lack supportability.").

Thus, Plaintiff has failed to meet his burden in showing that had the ALJ properly addressed supportability in relation to Dr. Deb's opinion, the ALJ would have reached a different conclusion, i.e., included in Plaintiff's RFC the more extreme limitations. *Bradley*, 2023 WL 4278793, at *4; *see Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3–4 (5th Cir. Jan. 18, 2023) (per curiam) (explaining that although ALJ did not adequately discuss the supportability and consistency factors, "her decision ma[de] clear that she considered them," and the claimant failed "to show that if the ALJ had given further explanation, then she would have adopted them"); *Nancy S. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-429-D-BK, 2023 WL 6299864, at *7–8 (N.D. Tex. Sept. 7, 2023) (finding that because medical evidence substantially supported the ALJ's finding and the doctor's opinion was unsupported by explanation and objective medical evidence, plaintiff could not meet her burden in showing that had the ALJ sufficiently explained supportability, she would have adopted more limiting restrictions); *Lee v. Comm'r of Soc. Sec.*, No. 4:21-cv-1390, 2022 WL 4490176, at *6 (S.D. Tex. Sept. 27, 2022) ("The ALJ's error did not prejudice [p]laintiff because an evaluation regarding supportability [of the checkbox opinion] would not change the ALJ's RFC determination.").

As to consistency, the ALJ noted that while Dr. Deb opined that Plaintiff's symptoms would constantly affect his attention and concentration, Plaintiff's "mental status examinations . . . have been generally unremarkable showing no limitation in his attention and concentration." *Id.* Based on this opinion and other evidence in the record, the ALJ concluded that Plaintiff could perform "light work [with] . . . restrictions," and while Plaintiff cannot perform past relevant work,

he can perform light work with a sit/stand option due to his use of a cane.  Tr. 24, 29, 31, 67 (emphasis omitted).

Throughout the ALJ's opinion, she addressed exam findings and compared them to other evidence in the record, Plaintiff's subjective complaints, and Plaintiff's reported daily activities, leading her to conclude that Dr. Deb's opinion was inconsistent with the record. *See* Tr. 23 (finding that the record only supports a "mild limitation in interacting with others [or] concentrating" based on his "reportedly normal" mental status examinations); Tr. 26 (discussing Plaintiff's activities in October and December 2021, such as being more active and chasing his dog); Tr. 28 (deeming complaints of numbness inconsistent with all other treatment records denying numbness or weakness); *id.* (noting that in February 2022, Plaintiff's daily activities included "housework, yardwork, walking, shopping, doing laundry, sweeping, driving and caring for pets"); *id.* (mentioning that Plaintiff "presented with a cane but walked without it").

Thus, the ALJ properly considered both the required factors (supportability and consistency), substantial evidence supports her conclusion, and remand is not required on this issue. *See Eason v. Comm'r, SSA*, No. 6:21cv173, 2022 WL 2183132, at *8 (E.D. Tex. May 21, 2022) ("[T]he ALJ addressed both the supportability and consistency of [the doctor's] opinions and identified specific medical evidence to support her conclusions.  Plaintiff has not shown that the ALJ failed to properly consider the opinion of [the doctor] . . . and her finding is supported by substantial evidence."), *R. & R. adopted by* 2022 WL 2182696 (E.D. Tex. June 16, 2022); *Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194-HSO-RPM, 2021 WL 7541415, at *8 (S.D. Miss. Dec. 17, 2021) (determining the ALJ's explanation of his persuasiveness finding was legally sufficient where he "relied on medical records spanning years from six different sources that consistently indicated" plaintiff's disposition, "reported activities, and documented social interactions" and

"incorporated [those findings] into his persuasiveness evaluation"), *R. & R. adopted by* 2022 WL 566175 (S.D. Miss. Feb. 24, 2022).

Given that Dr. Deb's opinion was "brief and conclusory" and lacked supporting documentation, the ALJ did not err in finding it was unpersuasive. *See, e.g.*, *Heck*, 674 F. App'x at 415 (explaining that in discounting treating physician's opinions, which were contained on a conclusory questionnaire, "the ALJ performed her role of weighing conflicting evidence and resolving the conflict"). The ALJ explained the supportability and consistency factors in finding Dr. Deb's brief and conclusory opinion unpersuasive, and that finding is supported by substantial evidence. Accordingly, the undersigned recommends the district judge affirm the Commissioner's decision.

### C. The ALJ properly considered Plaintiff's subjective complaints and limited her discussion of Plaintiff's non-compliance with treatment to assessing his credibility.

Plaintiff contends that the ALJ impermissibly considered his non-compliance with treatment in determining he was not disabled. Pl.'s Br. 8. Further, Plaintiff explains that a claimant must be given notice of the consequences of failing to follow prescribed treatment before benefits are denied. *Id.* Here, Plaintiff argues that the ALJ "made no such effort to comply and instead simply demonstrated her bias against Plaintiff's substance abuse addiction in relying on this . . . to improperly discredit Dr. Deb." *Id.* In addition, Plaintiff contends the ALJ "fail[ed] to perform the necessary analysis of Plaintiff's complaints . . . [or] point to any specific evidence in the record in support of her conclusions" and instead, "ignor[ed] Plaintiff's complaints of severe pain." *Id.* at 10. The Commissioner, on the other hand, avers the ALJ both considered Plaintiff's complaints and limited her evaluation of Plaintiff's compliance with treatment to assessing his credibility. Def.'s Br. 7. Thus, in the Commissioner's view, "the ALJ was not required to determine if Plaintiff complied with his prescribed treatment and, if not, whether his reasons were justified." *Id.*

15

The ALJ is in the best position to assess a claimant's credibility. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). In so determining, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citations omitted). The ALJ, however, may not base her disability determination on Plaintiff's non-compliance with treatment unless she follows the requirements in SSR 18-3p. *See* SSR 18-3p, 2018 WL 4945641 (S.S.A. Oct. 2, 2018) (rescinding and replacing SSR 82-59);[4] *Simmons v. Berryhill*, No. 4:17-CV-684-A-BJ, 2018 WL 3900912, at \*4 (N.D. Tex. July 31, 2018) ("[I]f the ALJ's ultimate finding that a claimant was not disabled is based significantly on the ALJ's perception that the plaintiff's failure to follow a prescribed treatment caused the condition to be worse than it might otherwise be, then the requirements of SSR [18-3p] apply."), *R. & R. adopted by* 2018 WL 3873664 (N.D. Tex. Aug. 15, 2018); *Pickens v. Saul*, No. 3:19-CV-1870-BH, 2020 WL 6290331, at \*7 (N.D. Tex. Oct. 27, 2020) (relying "'almost exclusively' on noncompliance with prescribed treatment to determine the claimant's RFC, and in ultimately finding him not disabled," requires adherence to SSR 18-3p). "On the other hand, if the ALJ considers the plaintiff's noncompliance merely in assessing the credibility of his subjective complaints, then the requirements of SSR [18-3p] are inapplicable." *Simmons*, 2018 WL 3900912, at \*4; *see Henson v. Comm'r of Soc. Sec.*, No. 7:20-cv-00145-O-BP, 2021 WL 8776794, at \*4 (N.D. Tex. Dec. 14, 2021) ("[A]n ALJ must apply SSR 18-3p unless the ALJ considers noncompliance as part of a credibility determination."), *R. & R. adopted by* 2022 WL 2078211 (N.D. Tex. June 9, 2022).

---

[4] Plaintiff cites to SSR 82-59, which has been rescinded and replaced by SSR 18-3p. *See* Pl.'s Br. 8. Because SSR 18-3p dictates the same basic order of operations as SSR 82-59—i.e., requiring the ALJ to undertake the first five steps of the analysis and determine whether the claimant is disabled before determining whether the claimant's failure to comply with treatment precludes a disability finding—the undersigned relies on opinions addressing SSR 82-59 to determine whether the ALJ properly used Plaintiff's non-compliance with treatment in determining his credibility. *See* SSR 18-3p, 2018 WL 4945641, at \*2–3; SSR 82-59, 1982 WL 31384, at \*1 (S.S.A. Jan. 1, 1982).

Here, the ALJ discussed Plaintiff's lack of compliance with treatment or failure to follow-up with prescribed treatment only to the extent it undermined Plaintiff's subjective complaints of pain. Also, contrary to Plaintiff's assertion, the ALJ cited records for support in evaluating and discrediting Plaintiff's complaints. For example, the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . [were] inconsistent because the record does not support a long-term difficulty being on his feet or using a cane with treatment." Tr. 25. The ALJ then went on to cite several records supporting that Plaintiff "was experiencing only on and off right knee pain," including that surgeries or injections improved his symptoms, exams documented no evidence of gait abnormality, and his daily activities were inconsistent with severe pain. Tr. 25–26.

As for Plaintiff's non-compliance with treatment, the ALJ noted that while Plaintiff was "referred for further knee surgery in July 2021, the record reveals that the claimant failed to follow-up . . . , which suggests that the symptoms may not have been as serious as . . . alleged." Tr. 26. Similarly, the ALJ explained that after experiencing relief from a knee surgery in February 2022, Plaintiff was scheduled for another surgery in June 2022, and "was told that he had to be sober prior to having surgery"; however, he failed a drug test, and the surgery was cancelled. *Id.* This led the ALJ to conclude that Plaintiff's "symptoms would have improved if [he] had pursued treatment recommendations and that his symptoms and limitations are not as severe as alleged."[5]

---

[5] The statement that Plaintiff's symptoms would have improved had he pursued surgery tracks Plaintiff's on and off complaints about his alleged disabilities and notes what is supported by the record—Plaintiff's symptoms improved when he received treatment. Moreover, the ALJ's observation is not error because it does not provide assumed treatment compliance as a factor in determining whether Plaintiff is disabled—it merely discredits Plaintiff's complaints of severe pain while also refusing to follow up with his treatment. *Cf. Simmons*, 2018 WL 3900912, at *5 (concluding the ALJ erred because he "stated several times that compliance with medication was a condition precedent to eligibility and found . . . that the exacerbations of [plaintiff's] mental symptoms and limitations were the result of his non-compliance . . . and appears to have crafted his RFC determination based on the assumption the Plaintiff was complying with prescribed medical treatment," rather than determining whether plaintiff was disabled when *not* taking medication); *Clark v. Astrue*, No. 4:12-0350, 2013 WL 105017, at *6 (S.D. Tex. Jan. 8, 2013) (reversing the ALJ's

*Id.*; *see also* Tr. 25–26 (failing to follow-up after knee surgery and physical therapy in December 2020 "strongly supports that the surgery was successful and" that his symptoms were "not all that bothersome").

First, the discussion above shows that the ALJ properly evaluated the Plaintiff's complaints and determined whether they were consistent with and supported by the record. *See Lewis v. Barnhart*, 460 F. Supp. 2d 771, 786 (S.D. Tex. 2006) (affirming ALJ's finding that plaintiff's subjective complaints were "not fully credible but exaggerated" because while the record supported that plaintiff suffered from pain, it did "not support a finding that [plaintiff's] pain [wa]s constant, unremitting, and wholly unresponsive to therapeutic treatment"); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991) (per curiam) (concluding that because "[t]he ALJ considered [plaintiff]'s subjective complaints of pain . . . [and] there was sufficient medical evidence in the record to support" his decision, the district court did not err in affirming the ALJ's decision).

Moreover, such findings are clearly limited to the ALJ's assessment of Plaintiff's credibility. *Compare Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-3126-L (BF), 2013 WL 632104, at *21 (N.D. Tex. Feb. 4, 2013) (finding that the ALJ "properly considered [p]laintiff's non-compliance . . . in assessing [p]laintiff's credibility" based on the ALJ's explanation that her failure to follow up "reduce[d] her credibility. . . [because] [w]ere her symptoms as limiting as she alleged, she likely would have taken her medication as prescribed"), *R. & R. adopted by* 2013 WL 628561 (N.D. Tex. Feb. 20, 2013), *and Benson v. Saul*, No. 3:20-CV-1974-E-BH, 2022 WL 868706, at *13 (N.D. Tex. Mar. 8, 2022) (evaluating plaintiff's non-compliance with prescribed treatment along with his past examinations, daily activities, and stabilization after a brief hospital stay, "properly considered [p]laintiff's noncompliance in

---

decision based on his determination that "*with medication compliance* the claimant would be able to . . . maintain a 40-hour work week").

evaluating whether his statements concerning the severity of his symptoms were consistent with the medical evidence"), *R. & R. adopted by* 2022 WL 865886 (N.D. Tex. Mar. 23, 2022), *with Henson*, 2021 WL 8776794, at \*5–6 (mentioning plaintiff's "noncompliance sixteen times in eight pages" and "bas[ing] his decision on presumed positive effects from theoretical future compliance" without following "the safeguards of SSR 18-3p" warranted remand), *and Clark*, 2013 WL 105017, at \*6 (identifying plaintiff's capacity to work in the RFC determination "as dependent on compliance" was error).

Lastly, there is a plethora of evidence in the ALJ's opinion beyond Plaintiff's non-compliance with treatment supporting the RFC determination, and thus the ALJ did not rely "almost exclusively" on non-compliance to find Plaintiff not disabled. *See supra* Section IV.B. (discussing the evidence the ALJ relied on such as Plaintiff's examinations over several years, daily activities, and subjective complaints); *Jones v. Saul*, No. 7:19-cv-00143-O-BP, 2020 WL 3848187, at \*6 (N.D. Tex. June 22, 2020) (concluding the ALJ did not rely "almost exclusively" on plaintiff's non-compliance with treatment where he "discussed and considered a variety of medical reports, testimony from [plaintiff], and other evidence in determining [plaintiff's] RFC"), *R. & R. adopted by* 2020 WL 3844141 (N.D. Tex. July 8, 2020); *see also Pickens*, 2020 WL 6290331, at \*8 (limiting discussion of "[p]laintiff's noncompliance in evaluating whether his statements concerning the severity of his symptoms were consistent with the medical evidence and other evidence in the record" to determine if he was disabled was proper). Thus, because the ALJ limited her discussion of Plaintiff's non-compliance with prescribed treatment to assessing his subjective complaints and considered those complaints in her RFC determination, she did not err in declining to follow the procedures set forth in SSR 18-3p.

In sum, the Court finds that the ALJ considered Plaintiff's subjective complaints of pain in determining his RFC, and properly limited her discussion of Plaintiff's non-compliance to undermining those complaints. In addition, the ALJ explained both the supportability and consistency factors and her decision is supported by substantial evidence. As such, Plaintiff has not established the ALJ committed reversible error.

## V.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

## VI.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   January 26, 2024.


D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE